## McNulty v. Blanier et al.

*Boroughs—Councils—Meetings of council—Burgess—Appointment of borough officers—Right of burgess to vote—Acts of May 14, 1915, and June 15, 1923—Payment of salaries of officers.*

1. At an organization meeting of a borough council the burgess presides, but cannot vote unless the vote of the council is equally divided.

2. At such meeting, the Act of May 14, 1915, ch. 7, art. 1, P. L. 312, does not say that the election of certain officers is the only business that may be transacted at or brought before it.

3. At the organization meeting the treasurer, the borough engineer, the street commissioner, the solicitor, a janitor and policemen may be elected, and if the vote is equally divided, the burgess may cast a vote for such officers as he prefers.

4. The legislature does not intend that, before appointing a treasurer, the council shall first create the office of treasurer by ordinance.

5. Nor does the legislature intend that at the organization meeting there shall be any limitations upon powers of council to transact general business, such as the appointment of officers and employees, without which the organization of the borough would not be complete.

6. Where an organization meeting of a borough council is held on Jan. 4th, and ordinances are introduced appointing certain persons to borough offices and fixing their salaries, and the vote on the same stands six to six, and thereafter there is no effective meeting as to said salaries until Sept. 1st, when a meeting is held as the result of an order of court, and at this meeting an ordinance is passed, by the casting vote of the burgess, authorizing the payment of the salaries fixed by the meeting of Jan. 4th, such ordinance is valid, and the salaries will be directed by the court to be paid, if it appears that the officers elected duly entered their bonds and performed their duties.

7. An ordinance of a borough authorizing the payment of salaries is such an ordinance as is contemplated by section 1 of the Act of June 15, 1923, P. L. 833.

8. Where, in the conduct of its business, a borough has received benefits and services performed in good faith and the charges therefor are considered reasonable by the council, or where there is a moral obligation on the part of the borough to pay for the services rendered, the council of the borough may pay to the person, officer or employee the amount in question, or any proportion thereof.

Bill in equity for injunction. C. P. Lackawanna Co., Oct. T., 1926, No. 28.

*David J. Reedy,* for plaintiff.

*Paul H. Maxey* and *Clarence Balentine,* for defendants.

WATSON, J., Sept. 24, 1926.—This is a motion by a taxpayer for an injunction to prevent payment by the Borough of Olyphant to John Fletcher, Brinley Lewis, Simon Russen, Jacob Szlusniak, Paul H. Maxey, William Koban, Joseph Mahlolick, Joseph Krayniak, David Williams and Michael Metrinko of salaries and compensation claimed by them, in pursuance of actions taken by the Council of the Borough of Olyphant.

At the hearing before the court, certain facts in the case were agreed upon. From the agreement as to facts and from the evidence, the court finds the following facts:

### Findings of fact.

1. That John J. McNulty, the plaintiff, is a citizen, property owner and taxpayer of the Borough of Olyphant.

2. That the Borough of Olyphant is a municipal corporation. There are four wards in the borough and the council consists of twelve members, three members from each ward.

3. That Andrew Blanier, one of the defendants, is Controller of the Borough of Olyphant.

4. That, at the organization meeting of the council, held on Jan. 4, 1926, John Fletcher and John Pettigrew were nominated for the office of treasurer; Brinley Lewis and W. A. Taylor were nominated for the office of borough engineer; Simon Russen and Michael Wargo were nominated for the office of street commissioner; Jacob Szlusniak and Timothy Loftus were nominated for the position of janitor of the borough building; Paul H. Maxey and Stanley M. Evans were nominated for the office of borough solicitor; William Koban, Joseph Maholick, Joseph Krayniak, David Williams, Thomas Nealon, M. J. Ruddy and J. J. Burke were nominated for the office of policemen, four policemen to be elected; Michael Metrinko and Anthony F. Walsh were nominated for the office of secretary of council, and John Borys and David Craven were nominated for the office of president of the council.

5. That, when the names of those nominated were presented to council, the vote on each position or office stood six to six, where there was one candidate to be elected and two nominated. Six of the councilmen voted for one candidate and six voted for the other candidate. On the vote for the policemen, twelve councilmen voted for William Koban, six voted for Maholick, six voted for Thomas Nealon, six voted for David Williams, six voted for Joseph Krayniak, six voted for J. J. Burke, and six voted for M. J. Ruddy. That the vote of council being equally divided, the burgess, George Chylak, was called upon to vote; that the said George Chylak cast his vote for John Fletcher for treasurer, Brinley Lewis for borough engineer, Simon Russen for street commissioner, Jacob Szlusniak for janitor, Paul H. Maxey for borough solicitor, Joseph Maholick, Joseph Krayniak and David Williams for policemen, John Borys for borough president, and Michael Metrinko for borough secretary.

6. That, at said organization meeting, certain ordinances, copies of which are attached to the plaintiff's bill and referred to as Exhibits A, B, C, D, E, F and G, were introduced, and, when put before the council, six councilmen voted in favor of the said ordinances and six councilmen voted against said ordinances, after which the chair declared said ordinances laid upon the table.

7. That, thereafter, no meeting of the council was held until July, 1926, for the reason that only six of the members thereof appeared at the time and place for the regular meetings on the first Tuesday of each month in February, March, April, May and June.

8. That George Chylak, burgess of the Borough of Olyphant, filed a petition to the Court of Common Pleas of Lackawanna County, praying for a mandamus to compel six of the members of said council, to wit, John (Reber) Fisher, Michael Kawaka, David Craven, Martin Gibbons, James Walsh and James Dempsey, to attend a meeting of council; the proceedings being to No. 92, May Term, 1926. On March 29, 1926, this court directed an alternative writ of mandamus to issue, which alternative writ of mandamus was dis-

missed by this court on July 2, 1926, and, in dismissing same, Maxey, J., in the opinion, said: "For the technical reasons herein stated, not because of any want of merit in the petition, we dismiss the alternative writ of mandamus heretofore issued in this case. This is done without prejudice to mandamus proceedings against the same respondents; such proceedings to be instituted in the name of the Commonwealth and on the relation of the Attorney-General or on the relation of the district attorney of this county."

9. That, thereafter, the District Attorney of Lackawanna County filed his petition to No. 586, October Term, 1926, praying that a peremptory mandamus be awarded, directed to forthwith issue to John (Reber) Fisher, Michael Kawaka, David Craven, Martin Gibbons, James F. Walsh, James Dempsey, John Boras, Joseph Zachor, Daniel Mezick, Alexander Kowalchik, Joseph Kwiatek and Stephen Colluci, members of the Council of the Borough of Olyphant, directing them to appear at the next regular meeting of the Council of the Borough of Olyphant, to be held on Tuesday, July 6, 1926, at 8 o'clock P. M., and that they then and there perform their duties and functions as councilmen of the said borough. That, on July 3, 1926, a peremptory mandamus was awarded by this court, and that a regular meeting of the council was held on July 6, 1926, at which the entire membership of said council was present; at which meeting the said ordinances referred to in the 6th finding of fact were voted upon by the members of the council, and the vote resulted in six votes in favor of the passage thereof and six votes against the passage thereof. George Chylak, the burgess, was called upon to cast his vote, and that he cast same in favor of the passage thereof.

10. That a meeting of the council was held on Wednesday, Aug. 4, 1926, and an ordinance was introduced as follows:

"An ordinance of the Borough of Olyphant authorizing the payment of salaries for the first six months of the year 1926 to the borough engineer, the borough secretary, the borough solicitor, the members of the police force, the janitor of the borough building, the street commissioner, the controller and the burgess.

"Be it ordained by the Council of the Borough of Olyphant, and it is hereby ordained and enacted by the authority of the same:

"Section 1. That the salaries due and owing the above named officers for the first six months of the year 1926, up until July 4, 1926, are hereby ordered paid by the borough treasurer out of the funds provided for that purpose."

That the vote upon the passage of said ordinance resulted in a tie, and the minutes of the meeting stated that the ordinance was tabled until the next regular meeting.

11. That a meeting of the council was held on Wednesday, Sept. 1, 1926, upon the minutes of which meeting the following appears: "An ordinance of the Borough of Olyphant authorizing the payment of salaries for the first six months of the year 1926 and up until 4th day July, 1926, to the borough engineer, borough secretary, borough solicitor, the members of the police force, namely, William Koban, Joseph Maholick, David Williams, Joseph Krayniak, and borough building janitor, the street commissioner, the controller and the burgess of Olyphant. Vote by roll-call requested on second reading. Six voted for and six against. The burgess was called upon to vote upon said ordinance, and Burgess Chylak cast his vote in favor of the adoption of said ordinance. Whereby the said ordinance is declared adopted by a vote of seven for adoption and six against adoption." And that James Walsh, James Dempsey, Martin Gibbons, David Craven, John (Reber) Fisher and Michael Kawaka voted against the passage of said ordinance.

12. That Michael Metrinko, secretary, is about to draw warrants in pursuance of the action of said council, the amounts of which warrants are as follows: For Brinley Lewis, $900; Simon Russen, $840; Jacob Szlusniak, $900; Paul H. Maxey, $1000; William Koban, $1050; Joseph Maholick, $1050; Joseph Krayniak, $1050; David Williams, $1050, and for Michael Metrinko, $450, and a warrant for John Fletcher for an amount to be determined; and that the borough controller is about to countersign the aforesaid warrants as drawn by the secretary, and that John Fletcher, treasurer, is about to pay the same.

13. That, at the meeting of the Council of the Borough of Olyphant held on Jan. 7, 1924, which was the first Monday of January, the council elected a president and treasurer and appointed individuals to the same offices and positions as the council did at the "organization meeting" in January, 1926, and that at that meeting in January, 1924, no definite term was fixed for which the appointees were to serve.

14. That Paul H. Maxey furnished solicitor's bond in the sum of $1000; that John Fletcher furnished treasurer's bond in the sum of $50,000; that John Fletcher as treasurer, Brinley Lewis as borough engineer, Simon Russen as street commissioner, Jacob Szlusniak as janitor of the borough building, Paul H. Maxey as borough solicitor, Joseph Maholick, Joseph Krayniak, William Koban and David Williams as policemen, John Borys as borough president and Michael Metrinko as borough secretary each performed, and that the borough accepted, their services in good faith.

*Discussion.*

1. It is necessary to consider the regularity of the action which was taken at the "organization meeting" held Jan. 4, 1926. Section 1 of chapter 7, article I, of the Act of May 14, 1915, P. L. 312, contains the following provision: "Section 1. The borough council shall organize at 8 o'clock post-meridian, on the first Monday of January, 1916, and biennially thereafter, by electing a president and secretary and such other officers as it may require."

Section 3, chapter 7, article I, of the same act contains the following provisions: "Section 3. The burgess shall preside over the organization meeting of the council, but he shall not vote thereat unless the vote of the council be equally divided."

At the hearing and in plaintiff's brief, counsel for plaintiff frankly conceded that John Borys was properly elected president and that Michael Metrinko was properly elected secretary, so that it will not be necessary for us to consider the action taken at the "organization meeting" as to the election of the president and secretary.

The plaintiff contends that there is a limitation of the powers of council at the "organization meeting;" that its powers are limited to the election of a president and secretary and such other officers as by law and borough ordinance are required to be elected at the organization meeting, and that John Fletcher was not legally appointed treasurer, Brinley Lewis was not legally appointed borough engineer, Simon Russen was not legally appointed street commissioner, Jacob Szlusniak was not legally appointed janitor, Paul H. Maxey was not legally appointed solicitor, and that William Koban, Joseph Maholick, Joseph Krayniak and David Williams were not legally appointed policemen.

The statute provides that council shall organize at a certain time by the election of certain officers, and that the burgess shall preside at the organiza-

McNulty *v.* Blanier et al.

tion meeting, but shall not vote unless the vote of the council be equally divided. The act does not say that the election of certain officers is the only business that may be transacted at or brought before the "organization meeting."

The plaintiff relies upon the case of Com. ex rel. Weimer *v.* Caldwell, 2 D. & C. 195, in which it was held by Evans, P. J., in the opinion: "The words in section 1, to wit, 'And such other officers as it may require,' mean such other officers as by law and by borough ordinances are required to be elected at that time."

The General Borough Act of May 14, 1915, ch. 7, § 6, par. 7, P. L. 312, provides that it shall be the duty of council to appoint a treasurer, and after placing this duty upon the council, the legislature did not intend that before appointing a treasurer the council should first create the office of treasurer by ordinance.

A treasurer is an officer which all boroughs require, and one which they require at all times in order that the moneys of the borough may be cared for.

Nor did the legislature intend that at the "organization meeting" there should be any limitation on the powers of the council to transact general business, such as the appointment of officers and employees, without which the organization of a large borough like the Borough of Olyphant could not be complete.

The act provides that the burgess shall preside at the "organization meetings," and vote where the vote of the council is equally divided. In our opinion, the burgess had the right to preside so long as the council remained in session, and had the right to vote on all questions where the vote of the council was equally divided.

It is a fact that, at a meeting of the Council of the Borough of Olyphant held in January, 1924, appointments were made for the same positions as those for which appointments were made at the meeting of the council in January, 1926, and those appointments were made without fixing any definite time for which the appointees were to serve.

In the case of Edwards *v.* Harrison et al., 19 Luzerne Legal Reg. 169, where there was a prayer for an injunction to prevent payment by a borough of salary claimed by Davis as solicitor, who had been appointed at the "organization meeting," Strauss, J., in discussing the regularity of the action taken at the "organization meeting" of the Council of the Borough of Edwardsville, said: "Nowhere in the statute is there any limitation on the powers of the council to transact general business, nor has any evidence been presented by any ordinance or rules of order governing the conduct or character of business which might be brought before that meeting. In the absence of the statutory or of a corporate by-law (ordinance) prohibition, the council's right to transact business was subject only to the condition that there be precedent performance of the duty imposed by the statute to elect a president, secretary and such other officers as it may require."

In the same opinion, it was held that the burgess had the right to preside at the "organization meeting" so long as the council remained in session.

And in the case of Edwards *v.* Harrison et al., 19 Luzerne Legal Reg. 423, Fuller, P. J., said on the same subject:

"In law, any business could have been transacted after the primary business of organization had been accomplished.

"Indeed, it is difficult to perceive why the appointment of a solicitor was not a matter of organization as much as the appointment of supervisor, engineer and fire chief."

McNulty v. Blanier et al.

In the case of Com. ex rel. District Attorney v. Kleeman et al., 20 Luzerne Legal Reg. 30, Strauss, J., held that the treasurer, street commissioner, chief of police, assistant chief of police and solicitor, who were elected at the "organization meeting" of the Council of the Borough of Swoyersville by the vote of the burgess, were legally elected at that meeting. Strauss, J., in the opinion, said: "The purpose of the statute is to prevent a deadlock on any question involving the organization in a council made up of an even number of members. The 4th section of chapter 7, article I, provides, if the council of any borough shall fail to organize within ten days from the time prescribed in section 1 of this act, the Court of Quarter Sessions, upon the petition of ten taxable inhabitants, verified by the affidavit of five of the petitioners, shall issue a rule upon the delinquents to show cause why their seats should not be declared vacant. The rule shall be returned not less than five days from the time of its issue, and after the hearing the court may declare the seats of such delinquent council vacant and appoint others in their stead who shall hold office for the unexpired term."

If we agree with the contention of the plaintiff that the power of the Council of the Borough of Olyphant at the "organization meeting" was limited to the election of the president and secretary, then we must conclude that any action upon other important business of the borough, which might well be a very important part of the organization, should, of necessity under the law, have been postponed until some later meeting of the council, which might not take place for several weeks or months in the future, which, in this case, did not actually take place until six months after the "organization meeting."

If we agree with plaintiff's contention, we must also conclude that at the "organization meeting" it is not in the power of council to fix the time for the regular monthly meetings of council, without which the council could not function after the "organization meeting" had adjourned, and this, notwithstanding the provision of the General Borough Act that "it shall be the duty of the council to meet statedly at least once a month."

The provisions of the General Borough Act as to certain offices and positions to be filled by the council are, in substance, as follows:

"Section 6. It shall be the duty of the council, a majority of whom shall be a quorum."

"VII. To appoint and remove a treasurer and secretary. Council in their discretion may appoint a solicitor, one or two street commissioners and such other officers as it shall deem necessary."

Chapter 7, article VI. "Section 7. On the first Monday of January, or within thirty days thereafter of each even numbered year, the borough council may appoint one or two persons as street commissioners, who shall serve for a term of two years or until their successors shall qualify."

Chapter 7, article VI. "Section 9. The borough council on the first Monday of January in any even numbered year, or as soon thereafter as practicable, may elect, by a vote of a majority of the members, one person, learned in the law, who shall be styled the borough solicitor, and who shall serve for the term of four years from the first Monday of January of the even numbered years in or succeeding which he was elected and until his successor qualifies. Vacancies in the office of borough solicitor shall be filled by the council for the unexpired term."

Chapter 7, article VII. "Section 14. Borough councils may appoint and remove one or more suitable persons, citizens of the Commonwealth, as borough policemen, who shall have the power to arrest persons violating any ordinance of the borough, the violation of which may subject persons to

arrest. . . . Section 17. The borough police shall receive a stated salary, to be fixed by ordinance."

It clearly appears that, under the law, it is the duty of the council to appoint a treasurer, and it is equally clear that the council may appoint a solicitor, one or two street commissioners and such other officers as it shall deem necessary or may require.

For the reasons given, we cannot agree with the conclusions reached by the learned judge in the case of Com. ex rel. Weimer v. Caldwell, 2 D. & C. 195.

As shown by the action of the council at the "organization meeting," the council did deem it necessary to have, and it did require, a treasurer, a solicitor, a street commissioner, an engineer, a janitor for the borough building and four policemen, and if our view is correct, viz., that the council had the right in its discretion to transact at the "organization meeting" any business relating to borough affairs after it had complied with the requirements that the officers named in chapter 7, article I, section 1, of the General Borough Act be elected, then the appointment of a treasurer, a solicitor, a street commissioner, an engineer, a janitor for the borough building and four policemen at the "organization meeting" was within the council's lawful powers at the time, and those officers or employees were duly and legally appointed, and, in our opinion, at the "organization meeting" of the Council of the Borough of Olyphant held on Jan. 4, 1926, John Borys was legally elected president, Michael Metrinko was legally elected secretary, John Fletcher was legally appointed treasurer, Brinley Lewis was legally appointed borough engineer, Simon Russen was legally appointed street commissioner, Jacob Szlusniak was legally appointed janitor of the borough building, Paul H. Maxey was legally appointed solicitor, Joseph Maholick was legally appointed policeman, Joseph Krayniak was legally appointed policeman, David Williams was legally appointed policeman and William Koban was legally appointed policeman.

We shall now consider the question of whether the compensation claimed by Brinley Lewis, John Fletcher, Simon Russen, Jacob Szlusniak, Paul H. Maxey, William Koban, Joseph Maholick, Joseph Krayniak, David Williams and Michael Metrinko is legally due them from the Borough of Olyphant.

The ordinances introduced at the "organization meeting" of Jan. 4, 1926, fixed the compensation of John Fletcher, borough treasurer, at 2 per centum of the amount of funds paid out by him on the borough orders, and provided that same should not apply under certain circumstances; fixed the salary of Brinley Lewis, borough engineer, at $1800 per annum; fixed the salary of Simon Russen, street commissioner, at $1680 per annum; fixed the salary of Jacob Szlusniak at $1800 per annum; fixed the salary of Paul H. Maxey, borough solicitor, at $2000 per annum; fixed the salaries of William Koban, Joseph Maholick, Joseph Krayniak and David Williams, policemen, each at $2100 per annum; fixed the salary of Michael Metrinko, borough secretary, at $900 per annum.

Six councilmen voted in favor of the passage of the ordinances and six voted against the passage thereof. Thereafter, there was no meeting of the council until July, 1926, for the reason that only six councilmen appeared at the time and place fixed for the meetings in February, March, April, May and June. In response to a peremptory mandamus awarded by Judge Maxey of this court on July 3, 1926, all of the councilmen met on July 6, 1926. The ordinances were again introduced and were passed, the burgess casting the deciding vote.

The Act of June 15, 1923, § 1, P. L. 833, provides: "Section 1. That, in all cases where, by reason of a tie vote, the council of any borough in this Com-

McNulty v. Blanier et al.

monwealth shall be unable to enact or pass any ordinance or fill a vacancy in its membership, and such disagreement shall continue until the next regular meeting of council, it shall be the duty of the burgess of such borough to attend said meeting and cast the deciding vote."

The council was unable to enact the ordinances by reason of a tie vote on each ordinance at the meeting of Jan. 4, 1926. The disagreement continued until the next regular meeting of council, which was not held until six months thereafter because there was not a quorum at the time and place fixed for the regular meetings in the intervening months. However, when the next regular meeting did take place, the burgess did his duty by attending the meeting and casting the deciding vote.

The plaintiff contends that the ordinances did not create the offices. We do not believe that council, by the enactment of these ordinances, attempted to create the offices. Council did intend to fix the salaries by ordinances, which was not necessary, except in certain cases such as that of policemen, where the law provides that the salaries shall be fixed by ordinance.

At the meeting of the council, which was held Aug. 4, 1926, an ordinance authorizing the payment of the salaries for the first six months of the year 1926 to the borough engineer, the borough secretary, the borough solicitor, the four members of the police force, viz., William Koban, Joseph Maholick, David Williams and Joseph Krayniak, the janitor of the borough building, the street commissioner, the controller and the burgess of Olyphant was introduced, and, by reason of the tie vote, it was unable to enact or pass the ordinance. The disagreement continued until the next regular meeting of the council, at which time the burgess attended the meeting and cast the deciding vote, by which the ordinance was passed.

The plaintiff contends that that which was voted upon at the meeting of Aug. 4, 1926, with reference to the payment of salaries, was not an ordinance and was something which was not intended by the Act of June 15, 1923, P. L. 833.

In the case of Kepner v. Com. ex rel., etc., 40 Pa. 124, the court, Chief Justice Lowrie, on page 130 of the opinion, said: "Ordinance, then, is the generic term for acts of council affecting the affairs of the corporation, and we can make no distinction between them founded on the difference of degree in which they affect those affairs."

An ordinance is one of the most formal acts of the borough council. The law requires that an ordinance shall be published in a newspaper and advertised by posted notices. It is true that the law does not require that orders for payment of salary shall be published in the form of ordinances, but it is difficult to see why the plaintiff should object to a procedure by council with reference to the passage of orders for the paying out of borough funds, which includes the publicity resulting from publishing the fact in a newspaper and from advertisements posted in public places. Certainly, a borough treasurer could not refuse to pay the salaries of borough officers or employees simply because the directions to him are given in ordinances instead of in ordinary motions or resolutions of council.

The treasurer furnished the bond which was required of him in January, 1926.

The solicitor furnished the bond which was required of him in January, 1926.

Michael Metrinko performed as secretary; John Fletcher performed as treasurer; Brinley Lewis performed as borough engineer; Simon Russen performed as street commissioner; Jacob Szlusniak performed as janitor of the

borough building; Paul H. Maxey performed as borough solicitor; Joseph Maholick performed as policeman; Joseph Krayniak performed as policeman; David Williams performed as policeman; William Koban performed as policeman, and the council accepted the services of all of those named in good faith.

While the proposed compensation was not expressly proved reasonable, it was presumptively so in the light of the ordinances and the absence of contrary proof.

The General Borough Act of May 14, 1915, § 17, P. L. 312, reads as follows: "Section 17. Where, in the conduct of its business, a borough has received the benefits of services performed in good faith, and the charges therefor are considered reasonable by the council, or where there is a moral obligation on the part of the borough to pay for services rendered, the council of the borough may pay to the person, officer or employee the amount in question, or any proportion thereof."

We feel that the case on this point falls within the principle of that provision and is controlled thereby. However, this question is raised in a court of equity, and since, under all the circumstances, it will be inequitable to deprive the treasurer, the borough engineer, the street commissioner, the borough solicitor, the janitor for the borough building and the four policemen of their compensation, we conclude that payment thereof should not be restrained by injunction.

### Conclusions of law.

1. The meeting of council held Jan. 4, 1926, at 8 o'clock P. M., was a meeting designated by the General Borough Act, chapter 7, article I, as "The organization meeting" set for that day and hour by chapter 7, article I, section 1.

2. It was the duty of council to organize at that meeting to elect a president, a secretary and such other officers as it may require.

3. It was the right of the burgess to preside at the "organization meeting" so long as the council remained in session.

4. There was no prohibition by statute or by ordinance against the transaction at said meeting of business other than the election of officers. The council had the right, in its discretion, to transact at that meeting any business relating to borough affairs after it had complied with the requirements that the above named officers be elected.

5. At the "organization meeting" of a borough council, when there are two candidates for treasurer, two candidates for borough engineer, two candidates for solicitor, two candidates for street commissioner, two candidates for janitor for the borough building and seven candidates for policemen, four policemen to be appointed, and the vote, when taken by the council, results in six for each candidate other than four policemen, six candidates for policemen receiving six votes each and one receiving twelve votes, the burgess has the right to vote, and these candidates for whom the burgess votes are legally elected or appointed.

6. An ordinance authorizing the payment of salaries and directing the treasurer to pay same is such an ordinance as is contemplated by section 1 of the Act of June 15, 1923, P. L. 833, and where, by reason of a tie vote, the council is unable to enact or pass the ordinance, and such disagreement continues until the next regular meeting, it is the duty of the burgess to cast the deciding vote, and if the burgess votes in favor of the passage of the ordinance, the ordinance is passed.

McNulty *v.* Blanier et al.

7. The appointments of a treasurer, a borough engineer, a borough solicitor, a street commissioner, a janitor for the borough building and four policemen were all matters of organization and they were properly and legally appointed at the "organization meeting."

8. While the proposed compensation was not stated to be reasonable in the facts agreed upon, or shown to be so, or expressly proved, it was presumptively so in the light of the ordinances. This point in the case is within the contemplation of the General Borough Act of 1915, *supra*, at page 394.

"Where, in the conduct of its business, a borough has received the benefits of services performed in good faith and the charges therefor are considered reasonable by the council, or where there is a moral obligation on the part of the borough to pay for services rendered, the council of the borough may pay to the person, officer or employee the amount in question or any proportion thereof."

We find no evidence and no law in this case to justify the granting of the injunction prayed for. In our opinion, the law, the facts and the equities are with the defendants.

In an agreement by counsel, which was made part of the record, it was agreed that the hearing on the rule to show cause why a preliminary injunction should not issue as prayed for in the bill should be considered a final hearing, as if upon bill and answer filed; that the defendant should not be required to file an answer, most of the facts having been agreed upon, and that the whole matter should be determined by the court as if the hearing were a final hearing.

*Decree.*—Now, Sept. 24, 1926, rule for injunction dismissed, the injunction refused and bill dismissed, each party to bear its own costs.

From William A. Wilcox, Scranton, Pa.