IN RE CLAIM OF J. B. HANNAHS.

L. A. ANDREW (D. W. BATES), Superintendent of Banking, Receiver, Appellant, v. WEST POINT STATE BANK et al., Appellees.

No. 42282.

FEBRUARY 6, 1934.

Edward L. O'Connor, J. R. Frailey and J. W. Napier, for appellant.

Pollard & Leary, for appellee.

EVANS, J.—The facts in the case are stipulated. At the time of the transaction between Hannahs and the West Point State Bank, such bank was a going concern. Prior to these transactions, the West Point Bank had a correspondent known in the record as the "Burlington Bank." The Burlington Bank had become the creditor of the bank of West Point to the amount of $11,000 and was holding collateral therefor, to the amount of $33,000. Such was the relation between the two banks when the Burlington Bank went into the hands of a receiver. The necessity of meeting its obligation to the Burlington Bank, and of releasing its collateral, gave much concern to the officers of the West Point Bank, and they took preparatory steps in the direction of obtaining sufficient funds to meet exigencies. The cashier and president of the West Point Bank sought a loan from Hannahs and offered him collateral security therefor. Hannahs had become a depositor in the West Point Bank a few months preceding and was a depositor to the amount of more than $1,000 at the time of these negotiations. The cashier and president reported all their negotiations with Hannahs successively to the

board of directors at their meetings, and acted under the direction of such board in all their doings in the premises. Hannahs was advised by the cashier and president of the attitude of the board of directors before he paid any money upon the loan. He was advised by these officers and by the attorney for the bank that the procedure adopted was in all respects legal and in effect that the board of directors had complied with all formality that was legally required of them for the purpose of the loan. In reliance upon these assurances, he deposited $7,200 in the bank and received from the bank officials two real estate mortgages for $4,000 and $3,500, respectively. These were duly assigned by the bank officials. The assignment recited that it was made pursuant to the order of the board of directors. The stipulation of facts at this point contains the following:

"And said cashier, Kreikenbaum, reported said arrangement and agreement to the board of directors of said bank at meetings held by said board, and the board of directors agreed to, authorized and approved the arrangement and agreement thus made between said J. B. Hannahs and J. A. Kreikenbaum, cashier; that no record of any discussion of said arrangement and agreement appears on the records of said bank, and no record of any resolution or motion authorizing the carrying out of said agreement or the approval thereof appears in the records or minutes of said bank, but it is stipulated by the parties that the aforesaid discussion and *authorization and approval actually took place and was given orally before meetings of said board.*"

The board of directors did not in fact make a record of their proceeding. In short, the board did authorize everything that was done by the president and cashier, and did fully approve the same, but neglected to make a record of such authority and approval. The question upon which the case turns is whether the failure of the board to enter its approval and authority upon the record was destructive of their negotiations with Hannahs. Section 9222-c2, chapter 415, of the Code of 1931, provides:

"The *cashier* or any other *officer* or *employee* shall have no power to pledge or hypothecate any notes, bonds or other obligations owned by said bank or trust company until such power and authority shall have been given, at least annually, to such cashier

or other officer or employee pursuant to a resolution by the board of directors, a written record of which proceedings shall first have been made; and a certified copy of said resolution signed by the president and cashier with the corporate seal annexed, shall be conclusive evidence of the grant of such power.

"All acts of pledging or hypothecation done by the cashier or other officer or employee of such bank or trust company without the authority from the board of directors shall be null and void, and any such *cashier* or other *officer* or *employee* violating the provisions of this section shall be guilty of embezzlement and shall on conviction thereof be imprisoned in the penitentiary not to exceed twenty years."

Section 9297, chapter 416 of the Code of 1931 provides as follows:

"Trust companies, state or savings banks, may contract indebtedness or liability for the following purposes: For necessary expenses in managing and transacting their business, for deposits, and to pay depositors, to maintain proper legal reserves and for other corporate purposes, and the directors of said trust company, state or savings bank shall have the right to pledge as security for said indebtedness or liability such assets of said bank or trust company as may be necessary."

The reliance of the appellant is upon section 9222-c2. The argument for the appellant rather subordinates section 9297 to section 9222-c2 and treats the latter section as a qualification of the former. We think there is no necessary inconsistency between the two sections. If there were, the legislative history would favor section 9297. This section was the product of 43 Gen. Assem. (c. 30, section 20) and 44 Gen. Assem. (c. 205); whereas the other section was the product of 43 Gen. Assem. (c. 30, section 21). The last legislative touch rested therefore upon section 9297. We do not rest, however, upon this point. These sections are found in different Code chapters. Chapter 416 deals with banks, whose articles of incorporation authorize them to act as fiduciaries; whereas chapter 415 deals with banks, whose articles of incorporation do not authorize the exercise of fiduciary functions. It will be noted that section 9222-c2 of chapter 415 purports to restrict the power of a subordinate *officer* to pledge or hypothecate any of the assets of the corpora-

tion without authority from the directorate. A violation of this section by the subordinate officer subjects him to' criminal prosecution. This section does not purport in any degree to restrict the powers of the corporation itself as represented by its directorate to pledge and hypothecate such assets. Turning to section 9297 of chapter 416 of the Code, express authority is conferred upon the directors of such corporation to pledge and to hypothecate, and this authority is conferred in broad and general terms without any restrictions whatever.

Since this case was heard and decided in the district court, we handed down an opinion in the case of Andrew v. Iowa State Bank of Osceola, 216 Iowa 1170, 250 N. W. 492. This case has received notice in the briefs of counsel. It is the contention of the appellee that the case is conclusive at all points upon the case at bar; whereas the appellant sees and points out distinctions to be observed.

The case is not necessarily identical with the case before us. But it is decisive upon one question that is quite pivotal herein. We did hold therein that, notwithstanding the failure of the board of directors to record its proceedings, this would not render such proceedings nugatory; and that such proceedings were provable in favor of third parties by evidence of the facts, nevertheless. In this case the authorization is proved by stipulation. The facts disclosed by the stipulation indicate that the negotiations carried on with Hannahs were done by the directorate itself through the president and cashier. In the cited case, we said:

"Section 9222-c2 does not prohibit the 'directors' of the bank from pledging its assets. The language used clearly indicates that the Legislature never intended to prohibit the 'directors' as a body, and managing board, from doing so, or it would have said so. Section 9297 specifically authorized the *directors of the bank* to pledge its assets, as security for such deposit; and section 9222-c3 fully authorizes banks to pledge their assets to secure such funds *as may be authorized by the superintendent of banking*. It is the settled rule of law that all statutes will be given such construction as to harmonize them with each other, and we believe that, by construing section 9222-c2 as not including the board of directors, as such, the statutes can be harmonized. The word 'officer' in the statute is used in the singular, and is evidently not meant to include the board of directors, as such. * * *

"The evidence shows that the obligation and agreement of the Iowa State Bank to deposit sufficient bonds with the Central National Bank & Trust Company of Des Moines, to secure the receivership funds deposited, was renewed on September 12, 1931, by direct action of the board of directors, at a meeting held in the bank at that time. It is true there is no evidence of the adoption of a formal written resolution to that effect, but the evidence clearly shows that the board of directors, at that time, again accepted the conditions of the court order, designating it as a depository, and at that meeting took action, requiring the cashier to deposit the necessary securities when required. The board of directors again accepted the obligations imposed by the second court order designating this bank as depository. The court order of September 12, 1931, imposed the same obligations as those contained in the first court order of December 15, 1930, and at the meeting of September 12, 1931, held in the bank, the board again authorized and directed the cashier to perform and carry out all of the obligations included in both orders. While there was no formal written resolution to that effect, the undisputed evidence shows that the board did take such action. * * *

"The statute does not require a written resolution to authorize the board of directors to pledge its assets, but authorizes such pledging without fixing the manner in which it shall be done. If a resolution is not necessarily required to be in writing, and if a yea and nay vote is not necessary to prove its adoption, a less formal action may be taken to adopt a measure not requiring either.

"The undisputed evidence of the cashier is that the board of directors at a meeting in the bank on September 12, 1931, accepted and agreed to the provisions of the court order of that date, and authorized and directed him to take all necessary steps to comply with the orders of court designating the bank as depository of the Simmons & Co. receivership funds. Such action of the board of directors, at that meeting, specifically authorizing and directing him to make such assignments, was the equivalent of a resolution to that effect, as a resolution does not necessarily have to be in writing."

The general rule of evidence applicable in a case where no record has been made of the proceedings of a board of directors is stated in 22 C. J. 1011, section 1295, as follows:

"Unless it is expressly provided by statute, charter or articles of incorporation that the acts and proceedings of a private corporation can be proved only by its records, parol evidence is admissible to prove a fact or transaction which, although required to be recorded, has been omitted from the corporate records. One reason for this rule is that the omission of a corporation to make a record of its proceedings should not be allowed to prejudice the rights of an innocent third person who has in good faith relied upon an official assurance of its corporate acts."

We see little occasion to go into the details of other questions raised and discussed. Inasmuch as we must hold that the board of directors did authorize this transaction, and that the money was obtained from Hannahs by express representation, that it had so authorized the transaction, it leaves nothing in the way of applying to the case the ordinary principles of equity. The bank got the money and still has it, to the amount of $4,451. The appellee tenders a return of the collateral upon payment of the balance of the debt. The applicant has come into a court of equity. He is subject to the rule that he must offer equity. If he disaffirms, he must return. To hold otherwise would be to permit the corporation to retain, to its own advantage, the money obtained by its officers, even though it were so obtained by false representations, as appears herein.

We think the district court properly dismissed the application, and its order is accordingly affirmed.

CLAUSSEN, C. J., and KINDIG, ALBERT, and STEVENS, JJ., concur.