## Kepner *versus* The Commonwealth *ex rel.*, &c.

*Resolutions of City Councils of Harrisburg, not valid unless approved by Mayor and recorded.—Regulations, Resolutions, and Ordinances, defined and distinguished.*

1. A resolution of the city councils, which is to be executed and carried into effect by the mayor, must be presented to him for his approval and be recorded, in order to be valid.

2. Where by one section of the act incorporating the city, it was provided, that the council may make "by-laws, ordinances, resolutions, and regulations," and by another, that "by-laws and ordinances" were to be submitted to the mayor for his approval, it was *held*, that there was no such distinction between the sections, as would require that "by-laws and ordinances" should, and "regulations and resolutions" should not be submitted to the mayor, to be approved by him.

ERROR to the Common Pleas of *Dauphin county.*

This was an application in the name of the Commonwealth *ex relatione* The City of Harrisburg, by the common council thereof, for a *mandamus* against William H. Kepner, mayor of said city, commanding him to sign certain coupon bonds, or certificates of loan for $5000, issued by the city of Harrisburg in favour of John Reigel, for money loaned for the use of the city.

The petition was filed October 29th 1860, and a rule granted on the defendant to show cause on or before the first day of the next term, why a *mandamus* should not issue against him.

The petition set forth in substance, that under the Act of Incorporation, the common council of the city of Harrisburg, on the 8th of September 1860, passed a preamble and resolution (of which the mayor had notice), authorizing and directing a loan of $5000 with John Reigel, of Cumberland county, on the faith and credit, and for the use of the city, for the purpose of redeeming so much of the permanent debt of the *borough* of

[Kepner *v.* The Commonwealth.]

Harrisburg, as was due and payable to said Reigel; and directing the certificates of the old debt to be cancelled. That they had directed the issue of coupon bonds to be used for this purpose—that the said loan was negotiated, and coupon bonds, or certificates prepared in the sum of $500 each, payable ten years after date, with interest at six per cent. clear of state tax, which were duly signed by A. W. Watson, City Treasurer. That the said Kepner had been, before the passage of said ordinance, duly elected and sworn into office as mayor of said city, and was, at the time of the filing of the petition, bound to discharge all the duties of the office of mayor according to law—and under the 27th section of the Act of Incorporation, was legally bound and required to sign said bonds or certificates of loan. That they were presented to him for signature with the seal of the corporation attached, with a certified copy of the resolution under which they were issued; but that he had refused to sign them, whereby the city was prevented from making such financial arrangements as were necessary to maintain her credit, &c.

To this an answer was filed by the respondent, admitting the incorporation of the city and his official position as mayor, but denying the several averments of the bill, and especially denying that the common council of the said city have any right, power, or authority vested in them by the provisions of the aforesaid Act of Assembly, to call upon, require, or compel him to sign bonds or certificates of loan issued or attempted to be issued by the said common council upon the faith and credit of the said city, thereby creating or intending to create a permanent debt upon the property and industry of the citizens of the said city, which, in the exercise of a sound discretion on his part, and in the discharge of his official duties as mayor of the said city, he believed to be improper, unnecessary, or likely to become oppressive and burdensome to the tax-paying inhabitants of the said city; and he further denied that the affixing of his signature to such bonds or certificates of loan is to be regarded, under the provisions of the said Act of Assembly, as a mere ministerial act or duty, which he was bound to perform upon the mere application or resolution of the common council of the said city; and further denied that the common council of the said city have any right, power, or authority to institute legal proceedings against him, as mayor of the said city, in the mode and manner herein practised and adopted, for any supposed or alleged official neglect or refusal on his part, as such mayor, to enforce, comply with, and carry out the by-laws, ordinances, regulations, or resolutions of the said common council, not authorized by the provisions of the said Act of Assembly, and which have not been passed, ordained, established, published, and recorded in compliance with the provisions of the 9th and 10th sections of the said Act of Assembly.

[Kepner *v*. The Commonwealth.]

To this answer the plaintiff demurred generally, and the respondent joined in the demurrer. On hearing, the court below delivered an opinion which would have resulted in a judgment for defendant on the demurrer, leaving the relators to their remedy by action; but, permitted the withdrawal of the demurrer, and that portion of the answer traversed by the relator, or an amendment by the respondent as they might see proper, for the reason that a general judgment on the demurrer would not settle the controversy.

On the 25th of March 1861, the counsel for the complainant filed the following motion:—

"At the instance of the relator, and by permission of the court, the *demurrer* filed by the relator in the above stated case so far as it relates to the first point in the answer or return of him, the said respondent is hereby withdrawn, and the following *replication by way of traverse* upon the first point in said answer or return of the said respondent to the alternative writ of *mandamus* in the above stated case is now filed, to wit:—

"And the said relator says that as to the first point of the answer or return of him, the said respondent, wherein ' he further answers and says that the said common council *did not,* under the powers and authorities vested in the said common council by the various provisions of the aforesaid Act of Assembly, and in fulfilment of and compliance with the said provisions, on the 8th day of September 1860, *pass a preamble and resolution* authorizing and directing a loan to be made to the amount of *five thousand dollars,* with one John Reigel, of Mechanicsburg, in the county of Cumberland, which was to be effected on the faith and credit of the said city of Harrisburg, and for the use of said city for the purpose of redeeming so much of the permanent debt of the old borough of Harrisburg, held by the said John Reigel, which was then due and payable.' It is not true and correct as therein averred, but the relator says the said common council *did pass said preamble and resolution* in manner and form as the said relator hath stated and referred to in the said *alternative writ of mandamus* and for the purpose and use therein specified, and that so much of the answer or return of him, the said respondent, as above quoted, which denied the passage of said preamble and resolution by the common council, is *not* correct and true in point of fact as therein alleged. And this the said relator prays may be inquired of by the country."

Whereupon the following order was made:—And now, to wit, March 25th 1861, on motion of Mr. *Briggs,* attorney for the Commonwealth, the demurrer in this case withdrawn, as per his motion filed, and a traverse of a portion of the answer entered, and it is ordered by the court that the issues so formed by the

[Kepner *v.* The Commonwealth.]

traverse of the answer, be placed on the list of causes for the next term, the question of costs on the amendment reserved.

This order was objected to by the respondent, who requested that his objection should be filed and a bill of exceptions sealed.

On the 1st of May a jury was called in the case, who returned a verdict in favour of the plaintiff; whereupon judgment was entered by the court in favour of the Commonwealth *ex rel.*, &c., on the issues of fact and law, and a peremptory *mandamus* awarded.

The case was then removed into this court by the respondent, by whom the following errors were assigned:—

1. The court erred in deciding "that the resolution in the present case (to wit: the resolution of the council of the 8th September 1860) did not require the approval of the mayor, and need not be published and recorded, except as all the *private actions* of the city council should be entered or recorded on its minutes." That the only kind of resolution that the charter requires to be submitted to the mayor for his approval or disapproval, "must be such a resolution as is directed to the people, and intended to regulate *their conduct, not one* which may merely *affect their interests* incidentally."

2. The court erred in deciding "The two last positions assumed by the answer raise questions of law which have been fully met and overruled in the general opinion. We have said that the mayor has no control over the council in regard to borrowing money. The loans do not require his acquiescence or consent, nor need he be consulted on the subject, or the resolution to borrow money be submitted to him, published or recorded. His duty in the case is merely ministerial; he possesses no judicial powers, and may be obliged by the town council, in the present form of proceeding, to affix his name to the bonds, in the same manner that the president of council could be required to attest them. It is a mere *ministerial* duty required by law, and which throws no responsibility on the mayor; that rests on the city council alone."

3. The court erred in deciding that "The *second proposition* of the defendant is, that the bonds were not issued in favour of Riegel in pursuance of any by-law, ordinance, regulation, or resolution, ordained, established, *published, and recorded* by the common council, in obedience to the provisions of the ninth and tenth sections of the Act of Assembly. We have already said that none of the matters here interposed as an objection to signing the bonds are valid. They are not required to be issued in pursuance of a resolution *published and recorded.* The *third proposition* denies that the mayor refused to sign bonds issued by the council pursuant to the law incorporating the city. This answer we deem insufficient." Also in deciding that "The *fourth denial* is predicated on the same legal principle as the

[Kepner *v.* The Commonwealth.]

second—that the ordinance or resolution under which those bonds were issued was not duly and legally passed, ordained, published, and recorded, pursuant to the Act of Assembly. This we have already decided to be defective, insufficient, and no legal answer."

4. The court erred in permitting the complainants to withdraw their demurrer to a part of the return of the respondent after joinder in demurrer, argument had thereon and opinion delivered; also to traverse a portion of said return, and to the directing an issue to be formed on said traverse.

5. The court erred in rejecting the evidence offered by the respondent on the trial of the issue ordered by the said court, to wit: " It is now proposed to prove the resolution read was never submitted to the mayor under the ninth section of the charter; that the common council do keep such a book as is required by the tenth section of the charter, and that this resolution was never recorded therein as required by that section; was never published in accordance with the provisions of that section, and that a *certified copy* of this resolution, under the corporate seal, was never served upon the mayor before the institution of these proceedings, though a copy of the resolution attested by the clerk, was presented with the bonds. Objected to by plaintiff's counsel. *Per Cur.*—We are of the opinion that no part of the evidence offered is admissible. This is simply an issue to try a particular fact, whether the resolution was passed or not, as stated in the petition and alternative writ of *mandamus* and responded to in the answer. Every question proposed now to be presented has been raised by the other parts of the defendant's answer and been decided by the court on the demurrer. We cannot receive evidence outside of the issue, nor would it in our opinion be relevant or important according to the construction we have given the charter. Evidence rejected.

The case was argued in this court by *John A. Fisher*, for plaintiff in error, and by *John H. Briggs*, for the relators, who were defendants in error.

The opinion of the court was delivered, July 25th 1861, by

LOWRIE, C. J.—The only question of any importance in this case, and the only one argued by the counsel is, whether the resolution of the city council, which the mayor is called upon to execute, is such a one as, in order to be valid, must be presented to the mayor for his approval, and also recorded. We think it is.

The resolution itself is, apparently, of very little importance, being only to renew a loan already owed by the city, as the legal successor of the borough of Harrisburg. It does not appear to

[Kepner *v.* The Commonwealth.]

change anything except the time of payment, and the liability for the state tax on the loan, and this the city is to pay.

Section 8 of the act of incorporation, vests the power of the corporation in the council, and § 27 vests the council with power to borrow money; but these provisions are not intended to set aside the form in which all ordinances are to be passed, published, and recorded, and, therefore, do not dispense with the form of submitting them to the mayor for his approval. In our state constitution all legislative power is vested in the General Assembly, and in the federal constitution all legislative power, and also expressly the power to borrow money, are vested in Congress; and yet these provisions are not incompatible with those which require all acts of Congress or of Assembly to be submitted to the president or governor for his approval. And it is quite idle to call this a subordination of the council to the mayor; for it is one of our most usual co-ordinations of authority, intended to prevent a hasty and ill advised adoption of measures affecting the customs, interests, and rights of the people. Sometimes it is troublesome, but in general it is of great benefit; and what is more to the purpose now, we find it enacted as law in relation to this corporation. Respect for the law, and respect for each other among co-ordinate authorities, will be found a very sure remedy against official encroachments and official jealousies.

But it is insisted, that this provision for submitting ordinances for the approval of the mayor, does not apply to a resolution for borrowing money, and we are referred to the special wording of §§ 8 and 9. It is argued that by § 8, the council may make "by-laws, ordinances, resolutions, and regulations," and that by § 9, it is only " by-laws and ordinances" that are to be submitted to the mayor for his approval, and that thus a distinction is intended to be indicated between by-laws and ordinances on one hand, and resolutions and regulations on the other, so that the former must be submitted to the mayor, and the latter not.

We find nothing but these words tending to indicate any design to make such a distinction; and the well known legislative habit of redundancy of language, forbids us to rely much on the multiplication of words as evidence of intended distinctions. The act says, that the council may "make, ordain, constitute, establish, and pass" ordinances, &c.; but all these verbs mean the same thing, and any one of them would have been sufficient. Moreover, one of these words is, "ordain,"—they may ordain by-laws, resolutions, and regulations. and those being passed are ordinances; for ordinances are regulations ordained.

Certainly there is some distinction between these words in ordinary usage. *Regulation* is the most general of them all, meaning any rule for the ordering of affairs, public or private; and it thus becomes the generic term from which all the others are

4 Wr.—9

defined, specified, or differentiated.  *Ordinance* is the next most general term, including all forms of regulation by civil authority, even acts of parliament.  With us its meaning is usually confined to corporation regulations.  Ordinances are all sorts of rules and by-laws of municipal corporations.  Ordinary usage shows this, and it may be found illustrated in Willcock on Corporations 73.

*Resolution* is only a less solemn or less usual form of an ordinance.  It is an ordinance still, if it is anything intended to regulate any of the affairs of the corporation.  If the word "ordinances" in the Act of Assembly, does not include such resolutions, the law that requires ordinances to be submitted to the mayor for his approval, is of no force at all, because it allows its substantial purpose to be defeated, by giving to ordinances the form of resolutions.

What we have said cannot, of course, apply to *rules of council*, properly so called, for these are mere rules of practice of the council itself in its deliberations, passed by virtue of an authority inherent in all associated functionaries, and implied when not expressly granted; and establishing the forms under which they act in the process of passing ordinances.  They are not ordinances, but rules for passing ordinances.

*Ordinance*, then, is the generic term for acts of council affecting the affairs of the corporation; and we can make no distinction between them founded on the difference of degree in which they affect those affairs.  Such a distinction would necessarily be so indefinite as to give rise to great difficulties in practice, and involve the danger of frequent resorts to the courts to settle disputed questions, and of frequent legal controversies upon the validity of acts of councils, even after they may have been carried into effect.

The general rule admits of no exceptions, in advance, that are not susceptible of exact definitions, else the general rule would soon be so encroached upon as to be of little value.  We cannot define, with perfect exactness, the distinction between the construction, reconstruction, and repair, of sewers and other works, and, therefore, all ordinances for such work must be submitted to the mayor for his approval.  If the council may, without any regard to the mayor, authorize the erection of one fire-plug or lamp-post, we cannot say that they may not go beyond two or a hundred.  If by one ordinance or resolution, they may do one thing without the advice of the mayor, they can pass a hundred ordinances or resolutions for a hundred things, and thus nullify the influence of the mayor altogether.  All ordinances that involve an expenditure of money, relate to the government, welfare, and prosperity of the city, and the law makes the mayor a functionary in the passage of them.  It would be strange, indeed,

[Kepner *v.* The Commonwealth.]

that the council should have capacity to bind the people by irrevocable contracts, with less solemnity than is required for ordinances regulating fire plugs and gutters, which may be repealed the next month.

The resolution in question, we have said, is apparently of very little importance, being only for the renewal of a loan, on slightly different terms. But if there is *any* difference, it is not for us to measure the degree of it, that may be overlooked in practice; unless possibly where parties have acted under it, and equity requires such interference. And it is possible to suppose, that the apparent unimportance of a resolution is not real, in principle at least; for the council may possibly be dishonest, at some time, in admitting the existence of a debt, and may at any time be mistaken about it. The law that gives the mayor authority, as a functionary, in the passage of ordinances, authorizes and requires him to ascertain their propriety, and, therefore, to inquire into all the facts that are proper to influence his judgment. He cannot properly approve any ordinance without such an inquiry. The council say the debt is due; he may think it is not, and the people have a right to his judgment as well as theirs.

And there is no sort of hardship in this; for it is not peculiar, but common. Thus are all acts of Congress, and of Assembly, passed, and enrolled, or recorded. And it is very right that every officer, who acts under instructions of council, should have this voucher, or recorded evidence, of his authority so to act. It is right that the treasurer should have such protection in the payment of warrants; that the mayor should have it in executing bonds; and that the people should have it, as a safeguard against all loose expenditures of money by council, and especially by committees of council. And it is exceedingly important, that the business of the new city shall be commenced with a strict regard to the order declared in their act of incorporation; for disorder at the outset is very sure to perpetuate itself. Some of the councilmen, while in office, may not like the restrictions which the law imposes on their power; and yet may think well of them after they go out.

Judgment reversed, and judgment for the defendant below with costs.