L. A. ANDREW, Superintendent of Banking, Plaintiff, v. IOWA STATE BANK of Osceola, Defendant.

J. H. LEWIS, Receiver, Claimant, Appellee, v. L. A. ANDREW, Receiver, Appellant.

No. 42184.

OCTOBER 17, 1933.

Edward L. O'Connor, Attorney-general, and W. B. Sloan, for appellant.

L. E. Crist, O. M. Slaymaker, and R. E. Killmar, for appellee.

KINTZINGER, J.—This is a controversy between the receivers of two insolvent banks over the right to the possession of $5,000 worth of government bonds now in the hands of the clerk of the lower court under a stipulation, pending the result of this action. Appellant concedes that claimant is entitled to preference for the entire claim filed, but contends that appellee is not entitled to a lien against the government bonds.

D. T. Eels was appointed receiver of the Simmons & Co. Bank on December 15, 1930. He resigned on September 12, 1931, and J. H. Lewis, the present receiver, was appointed as his successor. When the first receiver was appointed, the district court, making the appointment, also made an order designating the Iowa State Bank of Osceola as the sole depository of the receivership funds of the Simmons & Co. Bank. The order of such appointment required the Iowa State Bank to deposit government bonds with the Central National Bank & Trust Company of Des Moines as security for the repayment of the receivership funds deposited in its bank, and that said securities be sufficient to cover the entire amount of funds deposited. On December 16, 1930, the Iowa State Bank by resolution, duly adopted by its board of directors, accepted the office of depository with all the obligations incurred thereby, and authorized and directed its cashier to carry out the obligations imposed upon it by the order of court designating it as depository, and authorized and directed its cashier to comply therewith.

On the appointment of J. H. Lewis as receiver on September 12, 1931, the district court ordered that all the authority and power of the first receiver entered on the 15th day of December, 1930, be continued in full force, and be vested in the new receiver, with the same authority, power, and privileges given to the first receiver; and the new receiver was ordered and directed to deposit all re-

ceivership funds in the Iowa State Bank, which was again designated as depository; the court orders of December 15, 1930, requiring the Iowa State Bank to deposit sufficient securities with the Central National Bank & Trust Company of Des Moines to cover all receivership funds deposited were ratified, confirmed and continued in full force and effect.

The court order of September 12, 1931, bore the following written indorsement thereon:

"The above and foregoing order as to the depository for the funds of said receivership is hereby accepted and approved this September 12, 1931.

"Iowa State Bank.

"[Seal]                                    O. B. Monroe, Cashier."

The cashier testified *that he "was authorized by the Board of Directors of the Iowa State Bank to do that at that time.* It was done while the Board of the Iowa State Bank was present in a meeting at the bank. *At that Board meeting on September 12, 1931,* the resignation of Mr. Eels and the appointment of Mr. Lewis were talked over *and it was decided to continue as depository,* and I signed up Exhibit 'M' (being the endorsement referred to) in accordance with the order of the board."

The pledging of the bonds as security for the Simmons Bank receivership funds was approved by the state superintendent of banking on the 18th of December, 1930.

Although the Iowa State Bank, in compliance with the court order, had deposited with the Central National Bank & Trust Company of Des Moines a certain amount of securities, as required, they did not cover about $8,000 of the receivership funds deposited.

Prior to closing of the Iowa State Bank, the receiver of the Simmons & Co. Bank made repeated demands on the Iowa State Bank to deposit sufficient government bonds with the Central National Bank & Trust Company of Des Moines, Iowa, to cover the receivership funds as required by the order of court designating it as depository of such funds. Pursuant to said requests, and to carry out the obligations imposed upon it by the court order, and its acceptance thereof, the Iowa State Bank on August 5, 1932, made a written assignment to J. H. Lewis, receiver of the Simmons Bank, of $5,000 worth of government bonds, then in the possession of the clerk of the United States District Court. Although said bonds were

in the hands of the clerk of the federal court to secure certain bankruptcy funds, it appeared they would not be necessary for such security; but, as they could not be immediately withdrawn, they were assigned with the agreement that they be deposited with the Central National Bank & Trust Company of Des Moines, in conformity with the court orders referred to, as soon as they were released. Before such bonds were released, the Iowa State Bank itself was placed in the hands of the appellant, as receiver; and he now claims to be entitled to the bonds in question for the benefit of the creditors of the Iowa State Bank. It then appeared that the United States clerk had no further lien against said bonds. Thereupon it was stipulated that the bonds be placed in the hands of the clerk of the Iowa District Court, pending the final outcome of these proceedings.

The appellant concedes and contends that the receiver of Simmons & Co. Bank is only entitled to a preference against some $3,900 cash in the hands of the Iowa State Bank at the time it closed its doors; but that he is entitled to no preference or lien against the $5,000 of government bonds in question.

There is no question but that the assignment of the bonds in question was made by the Iowa State Bank to comply with the court orders designating it as depository.

Appellant claims that the assignment was unauthorized, was made in violation of section 9222-c2 of the Code, and is null and void. This section provides that:

"The *cashier* or any other *officer* or *employee* shall have no power to pledge or hypothecate any notes, bonds or other obligations owned by said bank or trust company until such power and authority shall have been given, *at least annually*, to such *cashier* or other *officer* or *employee pursuant to a resolution by the board of directors, a written record of which proceedings shall first have been made.*" (Italics ours.)

Appellee contends that section 9222-c2 applies only to pledges made by the *cashier*, or some other *officer* or *employee* of the bank, and not to pledges made by its board of directors, and that an assignment made by the bank's board of directors is valid and authorized by section 9297 and section 9222-c3 of the Code. Section 9297 provides inter alia:

"State or Savings Banks may contract indebtedness or liability for the following purposes: * * * (2) *for deposits,* (3) *to pay depositors,* and * * * (5) for other corporate purposes, *and the Directors of said * * * state or savings banks shall have the right to pledge as security for said indebtedness or liability such assets of said bank or trust company as may be necessary.*" (Italics ours.)

Section 9222-c3 provides that:

"State and savings banks * * * when authorized by the superintendent of banks *may pledge a portion of their assets to secure public funds and such other funds as may be authorized by the superintendent of banking.*" (Italics ours.)

The superintendent of banking did authorize the pledging of the bonds in 'question, to secure the funds deposited by the receiver of the Simmons & Co. Bank. All of the foregoing statutes were enacted by the legislature in 1929. Section 9222-c2 clearly limits the pledging of assets, by the *cashier* or some other *officer* or *employee* of the bank, and must be authorized annually by a resolution of the "Board of Directors".

Appellee contends that, if the pledge of assets, or agreement therefor, is made by the bank itself, through its board of directors, the statute does not apply. As this statute carries with it a severe penalty for its violation, it must be strictly construed. It is contended that any action taken by the board of directors is the direct action of the corporation itself. Not because they are *agents, officers,* or *employees* of the company, but because they represent and are the corporation itself. American Soda Fountain Co. v. Stolzenbach, 75 N. J. Law 721, 68 A. 1078, 16 L. R. A. (N. S.) 703, 127 Am. St. Rep. 822.

The acceptance of the conditions imposed upon the depository under the order of court, designating it as depository, constitutes an agreement upon its part to deposit the securities necessary to cover the receivership funds deposited in the Iowa State Bank. The cashier was not only authorized by the resolution of December 16, 1930, to assign securities at various times, but he was also specifically directed to do so as it became necessary to carry out the obligations of the bank. The act of pledging these securities or authorizing them to be pledged was the act of the board of directors of the bank. The cashier was simply directed to carry out what the bank had agreed

to do. Section 9297 and section 9222-c3 fully authorized and justified the directors of the bank to pledge as security for the deposit such assets of the bank as might become necessary.

Section 9222-c2 does not prohibit the "directors" of the bank from pledging its assets. The language used clearly indicates that the legislature never intended to prohibit the "directors" as a body, and managing board, from doing so, or it would have said so. Section 9297 specifically authorized the *directors of the bank* to pledge its assets, as security for such deposit; and section 9222-c3 fully authorizes banks to pledge their assets to secure such funds *as may be authorized by the superintendent of banking.* It is the settled rule of law that all statutes will be given such construction as to harmonize them with each other, and we believe that, by construing section 9222-c2 as not including the board of directors, as such, the statutes can be harmonized. The word "officer" in the statute is used in the singular, and is evidently not meant to include the board of directors, as such.

If the bonds in question were assigned by the board of directors to secure the receivership funds of the Simmons & Company Bank, deposited in the Iowa State Bank, then the receiver of the Simmons & Co. Bank would be entitled to have the proceeds thereof applied on the payment of its deposits in the Iowa State Bank without an annual authorization therefor.

Likewise, if it was necessary to show that a written record, of the action of the board of directors, authorizing the hypothecation, was made within a year prior thereto, the assignment would also be valid, if such a record was kept.

The evidence shows that the obligation and agreement of the Iowa State Bank to deposit sufficient bonds with the Central National Bank & Trust Company of Des Moines, to secure the receivership funds deposited, was renewed on September 12, 1931, by direct action of the board of directors, at a meeting held in the bank at that time. It is true there is no evidence of the adoption of a formal written resolution to that effect, but the evidence clearly shows that the board of directors, at that time, again accepted the conditions of the court order, designating it as depository, and at that meeting took action, requiring the cashier to deposit the necessary securities when required. The board of directors again accepted the obligations imposed by the second court order designating this bank as depository. The court order of September 12, 1931,

imposed the same obligations as those contained in the first court order of December 15, 1930, and at the meeting of September 12, 1931, held in the bank, the board again authorized and directed the cashier to perform and carry out all of the obligations included in both orders. While there was no formal written resolution to that effect, the undisputed evidence shows that the board did take such action. A resolution is something less formal than an ordinance, and need not necessarily be in writing. It has even been held that a yea and nay vote is not required to secure its adoption. Sawyer v. Lorenzen & Weise, 149 Iowa 87, 127 N. W. 1091, 1093, Ann. Cas. 1912C, 940. In that case we said:

"A 'resolution' is something less formal than an 'ordinance', and, generally speaking, is a mere expression of the opinion or mind of the council concerning some matter of administration coming within its official cognizance (Railroad Co. v. Chicago, 174 Ill. 439, 51 N. E. 596), and no set form of words is essential if the requirement which calls for such expression is met. * * * A resolution does not require a record of the yea and nay vote. of the council, and a less formal record of its passage may be sustained than would be required to show the adoption of an ordinance. The record in the instant case is sufficient to show without reasonable doubt that the town council intended by its action to express its consent to the defendant's proposal to establish the saloon in question, and the manner of such expression is not so informal as to render it nugatory. Cooper v. Nelson, 38 Iowa 440."

The statute does not require a written resolution to authorize the board of directors to pledge its assets, but authorizes such pledging without fixing the manner in which it shall be done. If a resolution is not necessarily required to be in writing, and if a yea and nay vote is not necessary to prove its adoption, a less informal action may be taken to adopt a measure not requiring either.

The undisputed evidence of the cashier is that the board of directors at a meeting in the bank on September 12, 1931, accepted and agreed to the provisions of the court order of that date, and authorized and directed him to take all necessary steps to comply with the orders of court designating the bank as depository of the Simmons & Co. receivership funds. Such action of the board of directors, at that meeting, specifically authorizing and directing him to make such assignments, was the equivalent of a resolution to

that effect, as a resolution does not necessarily have to be in writing. Such action was taken within a year prior to making of the assignment in question.

Section 9222-c2 requires that a written record of such proceedings shall first have been made. It appears without conflict that a written record of such action of the board was made by the written indorsement appearing upon the court order of September 12, 1931, as follows:

"The above and foregoing order as to the depository for the funds of said receivership is hereby accepted and approved this September 12, 1931.

"[Signed]   Iowa State Bank.
"[Seal]                            O. B. Monroe, Cashier."

It therefore appears that, although appellant's contention that an annual authorization by the board of directors might be required, and that written record thereof shall first have been made, the evidence shows that such requirements have been met.

In the instant case the evidence shows without dispute that the assignment of the bonds in question was made on August 5, 1932, as a pledge, by the bank itself through its board of directors. The cashier of the Iowa State Bank testified that the assignment of such bonds on the 5th of August, 1932, was under the authority, direction, and request of the board of directors. He also testified that the board of directors on September 12, 1931, agreed to at all times deposit sufficient bonds to secure the receivership funds. The evidence also shows that "he never did anything about these matters, *that he didn't take it up with the Board and have their full sanction and approval.*"

The evidence clearly shows that the board of directors of the Iowa State Bank fully agreed to pledge sufficient bonds to cover all receivership funds of the Simmons & Co. Bank deposited in the Iowa State Bank under order of court. As these deposits were made, it became the duty of the Iowa State Bank under its agreement as depository to deposit sufficient securities to cover them. It would be inequitable and grossly unjust now to permit the receiver of the Iowa State Bank to claim these bonds under the record presented in this case.

The evidence conclusively shows that the board of directors of the Iowa State Bank agreed by resolution adopted on the 16th

day of December, 1930, to secure all deposits made by the receiver of the Simmons & Co. Bank in the Iowa State Bank, and that the agreement made under this resolution was again adopted and ratified on September 12, 1931. All deposits made in the Iowa State Bank were therefore made on the expressed condition that the Iowa State Bank would deposit with the Central National Bank & Trust Company of Des Moines sufficient bonds to cover all of such deposits. The evidence also shows without conflict that the assignment of the bonds in controversy was made by and under the express authority of the bank itself, with the full sanction and approval of its board of directors. They were actually assigned as security for the receivership funds.

Under the record we are satisfied that the assignment of the bonds in question was made at the request and under the direction of the board of directors, and, as such, was the act of the bank itself. Under the circumstances shown by the record in this case, we believe the judgment of the lower court in holding the assignment valid was correct. It must be held in this case that the bonds in question were deposited by the Iowa State Bank in accordance with its agreement.

The judgment of the lower court is therefore affirmed.

ALBERT, C. J., and STEVENS, ANDERSON, and MITCHELL, JJ., concur.