CITY OF BANGOR *vs.* INHABITANTS OF ETNA.

Penobscot.   Opinion, October 15, 1943.

*B. W. Blanchard,* for the plaintiff.

*W. F. Jude,* for the defendants.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, MURCHIE, CHAPMAN, JJ.

MANSER, J.    This is an action to recover for pauper supplies furnished to Arthur M. Clewley, his wife and two minor children from December 19, 1940 to April 15, 1942, and amounting to $620.17. It was heard before a Referee upon an agreed statement of facts. The award was for the plaintiff. The report of the Referee was accepted against objections, and the case now comes forward on exceptions. It is not in controversy that pauper supplies, during the period and to the amount designated, were furnished and that the statutory requirements relative to notice and demand were complied with.

The defense is that, at the time the supplies were furnished, Clewley did not have a pauper settlement in the defendant town. This contention is based upon two propositions. The first is that, although originally his settlement was in Etna, he had acquired a new one in Bangor.

The agreed statement of facts discloses that Clewley was born in Etna November 16, 1896 and lived there with his parents during his entire minority; that he thus obtained a derivative pauper settlement in Etna upon reaching his majority on November 16, 1917. He continued to live in that town for approximately 13 years thereafter. Consequently, he retained his pauper settlement in Etna during that period. The settlement continued in Etna unless a new settlement was acquired by Clewley. R. S., c. 33, § 1, Par. II, as amended. *Milo v. Gardiner*, 41 Me., 549. The only method under the statute as applied to the circumstances of this case, by which he could have acquired such new settlement, is found in R. S., c. 33, § 1, Par. VI:

"A person of age, having his home in a town for five successive years without receiving supplies as a pauper, directly or indirectly has a settlement therein."

The record discloses that the pauper moved from the town of Etna September 30, 1930, and after living in the towns of Carmel and Veazie for short periods terminating in March 1932, went with his family to live in Bangor, and remained there until July 1, 1937, a period of more than five years. He then lived in Brewer for less than two months and returned to Bangor in August 1937, where he has since remained. It appears, however, that the City of Bangor furnished him and his family with supplies from May 10, 1932 to January 11, 1933, and at various intervals since that time until the period beginning December 14, 1940, involved in the present suit.

The defendant contends that the proof is insufficient to show that the supplies furnished during the earlier period named, from May 1932 to January 1933, were pauper supplies, but the Referee decided this question of fact in favor of the plaintiff, and there is justification for the finding. This contention fails.

The second proposition upon which the defendant relies is that the status of Clewley and his family was created, fixed or determined as that of State paupers by virtue of c. 80 of the legislative Resolves for the session of 1931. The first paragraph of this Resolve reads as follows:

"Resolved: That there be and hereby is appropriated to be paid to the cities, towns, counties and persons hereinafter named the sum set opposite their respective names, amounting in the aggregate to the sum of eighteen thousand, two hundred six dollars and seventy-three cents, being the amounts recommended by the committee on claims presented to said committee."

Then follows a list of 66 items and included in the list is:

"Town of Etna to reimburse for support of Arthur M. Clewley and family, state paupers, $628.97"

While the great majority of items are for reimbursement to various towns, cities and plantations for support of named individuals designated as state paupers, there are also items for reimbursement for support of certain Indians and for payments to hospitals and physicians for treatment of Indians and to a town for the support and burial of an unknown person. It is apparent that the procedure followed as a basis for the resolve was the presentation to the legislative committee of claims by the various municipalities and individuals that they should be reimbursed or compensated for supplies and services to individuals whom they represented as having no pauper settlement in any town; that the committee on claims accepted the representations of the claimants and the Resolve was passed.

In the particular case of Clewley, the record now before us clearly demonstrates that he was not a state pauper. He lived all his life until September 30, 1930, preceding the legislative session of 1931, in the town of Etna. The claim presented by the town was passed upon by the committee, submitted to the legislature and approved by the Governor April 2, 1931. Evidently the sum of $682.97 had been paid out for pauper supplies furnished to Clewley before he ever left Etna, or in any event, within a very few months thereafter. The assumption by the committee and the legislature that Clewley was a state pauper was without factual basis. It did not have the force and effect of a judicial determination.

There is discussion in the brief for the plaintiff that the resolve was repugnant to the constitution; that it was an undertaking by the legislature to exercise judicial power or an attempt to fix the status of a person as a state pauper by a mere resolve.

In the opinion of the Court, the constitutionality of the

Resolve is not in issue because it is our conclusion that the legislature did not undertake to create or fix a status for any of the individuals named therein. The Resolve was merely an appropriation to reimburse municipalities and individuals for expenditures upon claims presented and approved by the committee on claims. It was not a legislative enactment. It was purely an order directing the disbursement of certain State funds for particular purposes.

It is within the power of the legislature to make such orders and resolutions, without any purpose or intention to abrogate, annul or repeal any existing general law. For illustration, we find that the same legislature appropriated funds by specific resolves, directing the superintendent of public buildings to hang the picture of an eminent citizen in an appropriate position in the State House; to purchase copies of histories of various towns; to compensate an individual for damages to his automobile by collision with a deer; to compensate a man for capturing escaped prisoners; to empower the Governor to accept and deposit in the capitol a Greek flag. Such actions by the legislature are within its wise discretion and judgment, but are administrative in character.

> "It is not every act, legislative in form, that is law. Law is something more than mere will exerted as an act of power. It must be not a special rule for a particular person or a particular case." Opinion of Justices, N. H., 33 A. 1076. .

Blackstone in his Commentaries, defining law as "A rule of civil conduct prescribed by the supreme power in a state, commanding what is right and prohibiting what is wrong," proceeds to say:

> "And, first, it is a *rule*: not a transient sudden order from a superior to or concerning a particular person; but something permanent, uniform, and universal." Vol. 1, 44.

We are not to be understood as saying that a resolution passed by both branches of the legislature and approved by the Governor does not have the force of law to accomplish the intended purpose which, in this instance, was the payment of sums of money to various towns.

In *Moulton* v. *Scully*, 111 Me., 428 at 447, 89 A. 944 at page 953, the claim was made that a resolution passed by the legislature in favor of the adoption of an address to the Governor for the removal of a sheriff was a legislative enactment and was within the scope and contemplation of the constitutional referendum provision which prevented the Resolve from having any effect until ninety days after the recess of the legislature. The Court said:

> "The fallacy of the claim lies in the failure to distinguish between the Legislature as a law making body and the Legislature as an impeaching or addressing body. . . . The two are absolutely distinct and the referendum applies to the one but not to the other."

Before the adoption of the initiative and referendum amendment to the Constitution, all public laws and all private and special laws contained as an enacting clause:

> "Be it enacted by the Senate and the House of Representatives in Legislature Assembled."

Under Article XXXI of the constitutional amendments relating to the initiative and referendum, the clause now reads:

> "Be it enacted by the people of the State of Maine."

Uniformly throughout the history of legislative procedure in Maine, resolves have carried no enacting clause.

> "The chief distinction between a resolution and a law seems to be that the former is used whenever the legislative body passing it wishes to merely express an opinion

as to some given matter or thing, and is only to have a temporary effect on such particular thing; while by the latter it is intended to permanently direct and control matters applying to persons or things in general." *Conley* v. *U. D. of Confederacy,* 164 S. W., 24, 26 (Tex. Civ. App.)

We agree with the statement of the Vice Chancellor in *Ex parte Hague,* 104 N. J. Eq. 31, 144 A. 546 on pp. 559-560 that it is not every act, legislative in form, that is a law. An appropriation bill, for instance, is not a law in its ordinary sense. Such a bill pertains only to the administrative functions of government. A joint resolution or resolve, is often merely a rule or order for the guidance of the agents and servants of the government.

It is true that the legislature can alter as well as enact statutes, with respect to paupers, their settlement and the liability of towns to provide for them. *Rockland* v. *Inhabitants of Lincolnville,* 135 Me., 420, 198 A. 744. Changes have been made from time to time since the enactment of the original pauper laws in 1821 (ch. CXXII). The statutes so enacted prescribe fixed general rules and classifications and the

" . . . burdens thus imposed are deemed to be of a general character, upon an average and in the long run operating with equal fairness upon all the cities and towns in the state. *Appleton* v. *Belfast,* 67 Me., 579.

There is no language in the legislative resolve relied upon and there is nothing inherent in or disclosed by it which impliedly annuls the effect of the general law with respect to a particular person.

*Exceptions overruled.*