## JANET RENNER v. NEW ULM POLICE RELIEF ASSOCIATION.

165 N. W. (2d) 225.

February 14, 1969—No. 41281.

*Gislason, Reim, Alsop & Dosland* and *C. Allen Dosland,* for appellant.

*Somsen & Dempsey* and *Terrence M. Dempsey,* for respondent.

NELSON, JUSTICE.

Appeal from a judgment for plaintiff, Janet Renner, in an action to recover benefits from defendant, New Ulm Police Relief Association, following the death of her husband, who died in the course of his employment on June 23, 1966, from an accidental gunshot wound.

The matter was submitted to the District Court of Brown County on an amended stipulation of facts which reads as follows:

"The parties hereto, through their respective counsel, hereby stipulate and agree that the following are the material facts which apply to the within lawsuit and that the Court may consider and decide the above-mentioned lawsuit upon the following stipulated facts:

"Defendant at all times herein material was and is now an organization existing under and by virtue of Minnesota Statutes Sections 423.37 through 423.392.

"On May 23, 1966, Paul D. Renner began his employment with the City of New Ulm as a police patrolman third class, position No.

P-5003-2, at a salary of $385.00 per month, plus $7.20 per month cost of living adjustment.

"On June 23, 1966, Paul D. Renner, while performing his duties as police patrolman of the City of New Ulm, sustained personal injuries which resulted in his death.

"Plaintiff Janet Renner is the surviving widow of the said Paul D. Renner.

"On June 5, 1956, the City of New Ulm by resolution of the City Council adopted 'Personnel Rules and Regulations.' Copies of said resolution are marked Exhibit A and copies of the 'Personnel Rules and Regulations' are marked Exhibit B, and Exhibits A and B are attached hereto and made a part hereof.

"Nothing had been deducted from the salary of the said Paul Renner pursuant to M. S. A. 423.377, nor had Paul Renner contributed any money to the Police Relief Association during the time that he had been a police patrolman third class. The practice and policy of the City of New Ulm since the establishment of the Police Relief Association, up to and including the present time, has been to make no deductions pursuant to M. S. A. 423.377 from the salary of any patrolman who has not served the six-month probationary period provided by the Personnel Rules and Regulations * * *.

"The Articles of Incorporation of the New Ulm Police Relief Association, which were duly adopted on February 10, 1949, and filed for record with the Secretary of State of the State of Minnesota on February 18, 1965, provide in part as follows:

" 'Section 1. Every duly appointed policeman, policewoman or police matron, who is regularly entered on the payroll of the Police Department of said City and who is serving on active duty therein and who has served the probationary period provided for in the By-Laws, shall automatically become a member of this corporation except that substitutes and persons employed irregularly from time to time shall not be such member.

" 'Section 2. The annual dues of members shall be $5.00 payable annually at such time as the By-Laws shall prescribe.

" 'Section 3. Any member failing to pay such dues or failing to ac-

count for any money belonging to said corporation which may have come into his hands, shall be expelled in the manner prescribed in the By-Laws.'

"A true and correct copy of the By-Laws is attached hereto, marked Exhibit C, and made a part hereof. Article IV, Section 1, of the By-Laws under which the defendant was operating as of the date of the incident here involved, provides as follows:

" 'Disability and service pensions and all other benefits allowable and payable under M. S. A. Chapter 423.37 to 423.392 and amendments thereof to and including Minnesota Laws of 1959 shall be paid by the Association in the maximum amounts allowable under the above sections of the law. The benefits to be paid to the widow who shall qualify under the provisions of M. S. A. Chapter 423.37 to 423.392 and amendments thereof to and including Minnesota Laws of 1959, shall be in an amount equal to the benefits received by her deceased husband, and in the case of the surviving widow of an active member of the Relief Association, such benefits shall be equal to one-half of the prevailing pay of active members of the Association of equivalent rank, or the position most closely analogous thereto.'

"That the defendant by due and proper resolution, elected to be bound by the provisions of M. S. A. 423.37 to 423.392 inclusive as of the 9th day of January, 1961."

Upon these facts the court made findings and ordered judgment in plaintiff's favor on September 30, 1967. A memorandum (accompanying but not made a part of the findings and order for judgment) explains that the city has not enacted an ordinance defining the probationary period for a policeman, so plaintiff has established her right to benefits despite the city's practice of requiring a 6-month probationary period for policemen.

Defendant contends that the city had established that probationary period by the resolution of the city council adopted June 5, 1956, approving and adopting "Personnel Rules and Regulations" previously prepared by the city manager. Section 7 of these rules provides in part:

"All original or promotional appointments shall be for a probationary

period of 6 months. At any time during the probationary period an unsatisfactory employee may be released or rejected."

Having elected to be bound by Minn. St. 423.37 to 423.392 (pursuant to § 423.37), defendant argues that plaintiff's husband was expressly excluded from membership in the association prior to completion of the 6-month probationary period. It relies on § 423.372, which provides in part:

"A policeman [under this act] is a duly appointed policeman, policewoman, or police matron, who is regularly entered on the payroll of the police department of such city, serving on active duty therein, *after having completed any probationary period required under the laws or ordinances of such city. Probationers in the police department, substitutes and persons employed irregularly from time to time, and elective officials of such department, shall not be deemed to be included under [this act]*." [1] (Italics supplied.)

Defendant's bylaws, referred to in the stipulation of facts and attached thereto as exhibit C, sets forth the requirements with reference to payment of benefits to widows who "qualify under the provisions of M. S. A. Chapter 423.37 to 423.392 and amendments thereof to and including Minnesota Laws of 1959."

Section 423.377 provides for monthly deductions from the salaries of policemen of cities subject to the provisions of L. 1943, c. 521 (Minn. St. 423.37, et seq.), for transfer to the special fund of the policemen's relief association. It was stipulated that nothing had been deducted from the deceased employee's salary pursuant to § 423.377.

Plaintiff contends, however, that Rule 7 of the city's "Personnel Rules

---

[1] Section 423.373 uses like language. It provides: *"Every policeman as herein defined shall automatically become a member of the policemen's relief association of any such city upon the completion of any probationary period required under the laws or ordinances of such city and his appointment as a regular policeman of such city as defined in section 423.372.* He shall thereupon become subject to the articles of incorporation and by-laws of such association, and shall be entitled to all of the privileges and benefits therein provided for members of the policemen's relief association of such city." (Italics supplied.)

and Regulations" did not create a probationary period for policemen because Minn. St. 423.372 refers to "any probationary period required under the laws or ordinances" of a city subject to §§ 423.37 to 423.392. She argues that the resolution was not a "law or ordinance" within the meaning of this statute and thus does not disqualify her from receiving benefits.

It is clear that the resolution was not given public readings and was not published, as is required by the home rule charter of the city of New Ulm (§§ 66 and 70), for enactment of an ordinance. The issue before us is thus whether the resolution comes within "laws or ordinances" as used by the legislature in § 423.372.

Other courts have considered similar questions with varying conclusions. In Sawyer v. Lorenzen & Weise, 149 Iowa 87, 127 N. W. 1091, the Iowa Supreme Court had under consideration a resolution by a town council expressing its consent to the sale of intoxicants by the proprietors of a saloon. The court said (149 Iowa 91, 127 N. W. 1093):

"* * * A 'resolution' is something less formal than an 'ordinance,' and, generally speaking, is a mere expression of the opinion or mind of the council concerning some matter of administration coming within its official cognizance, Railroad Co. v. Chicago, 174 Ill. 439 (51 N. E. 596), and no set form of words is essential if the requirement which calls for such expression is met. Subject to certain exceptions noted in Code, sections 683, 684, a resolution does not require a record of the yea and nay vote of the council, and a less formal record of its passage may be sustained than would be required to show the adoption of an ordinance. The record in the instant case is sufficient to show without reasonable doubt that the town council intended by its action to express its consent to the defendant's proposal to establish the saloon in question, and the manner of such expression is not so informal as to render it nugatory."

Accord, Andrew v. Iowa State Bank, 216 Iowa 1170, 250 N. W. 492.

In Kepner v. Commonwealth, 40 Pa. 124, 130, the court in considering the term "ordinance" and the term "resolution" said:

"*Ordinance* * * * is the generic term for acts of council affecting

the affairs of the corporation; and we can make no distinction between them founded on the difference of degree in which they affect those affairs."

"*Resolution* is only a less solemn or less usual form of an ordinance. It is an ordinance still, if it is anything intended to regulate any of the affairs of the corporation."

See, also, Fuller v. City of Scranton, 1 Pa. Co. R. 405.

In Chandler v. Johnson City, 105 Tenn. 633, 637, 59 S. W. 142, 143, the Tennessee Supreme Court considered the terms "ordinance" and "resolution," holding that the term "ordinance" as used in a city charter requiring the board of mayor and aldermen at its first meeting after the election and qualification to fix the salaries of officers by ordinance should be construed as synonymous with "resolution."

In Wisconsin Gas & Elec. Co. v. City of Fort Atkinson, 193 Wis. 232, 213 N. W. 873, 52 A. L. R. 1033, the Wisconsin court held that proceedings for the sale of municipal utilities could be initiated by a resolution where the statute provided that they could be begun by resolution or ordinance, although another statutory provision defined resolution to mean ordinance. The court held the latter provision inapplicable in view of the history of the statute, the appropriateness of proceeding by resolution, and the rule that special provisions of a statute are controlling over general provisions. Commenting further relative to the distinction between "resolution" and "ordinance," the court said (193 Wis. 244, 213 N. W. 878, 52 A. L. R. 1041):

"The only substantial difference between a resolution and an ordinance apart from the subject to which it shall apply is that the one is required to be published subsequent to its passage and the other is not."

See, also, Kerlin Brothers Co. v. City of Toledo, 20 Ohio Cir. Ct. 603, 11 Ohio Cir. Dec. 56; Campbell v. Cincinnati, 49 Ohio St. 463, 31 N. E. 606; State ex rel. Kettle River Quarries Co. v. Duis, 17 N. D. 319, 116 N. W. 751; City of Alma v. Guaranty Sav. Bank (8 Cir.) 60 F. 203, where the court held it is proper to act by resolution if the action taken is merely declaratory of the will of the corporation in a given matter and is in the nature of a ministerial act and that municipalities may

submit to the voters the question of borrowing money and issuing bonds therefor by means of a resolution rather than an ordinance where there is no statute expressly requiring an ordinance in such a case.

Defendant has cited City of Bangor v. Inhabitants of Etna, 140 Maine 85, 34 A. (2d) 205, wherein the court held that a resolution passed by both branches of the legislature and approved by the governor has the force of law to accomplish intended purposes. It has also been held that a joint resolution duly passed by the legislature and approved by the governor making an appropriation to reimburse a county on account of taxes canceled on the order of a state board is a valid law within the constitutional provision prohibiting the payment of money out of the state treasury, except in pursuance of an appropriation by law. See, Board of Commrs. of Marshall County v. Shaw, 199 Okla. 66, 182 P. (2d) 507. See, also, Kepner v. Commonwealth, *supra.* It has also been held that the terms "resolution" and "ordinance" are frequently used interchangeably and, at most, an ordinance merely connotes a more formal and solemn declaration. Town of Walkerton v. New York, C. & St. L. R. Co. 215 Ind. 206, 18 N. E. (2d) 799.

These cases furnish examples of the approach of various courts to a situation like the one before us. The essential question here, however, is what the legislature intended by its use of "laws or ordinances" in conjunction with the establishment of a probationary period for employees under the act. Defendant's contention is that the legislature used this language in such manner that under any reasonable reading of the statute it must be found that the legislature intended that a resolution duly adopted by the governing body of the city of New Ulm, accepting and adopting the personnel rules and regulations under which the city and defendant have operated for a period of over 10 years, would fully meet the requirement that a probationary period be established by "law or ordinance." [2]

---

[2] The position of defendant that the words "laws or ordinances" should be given a broad interpretation finds clear support in the second sentence of § 423.372, which flatly provides: "Probationers in the police department, substitutes and persons employed irregularly from time to time, and elective officials of such department, shall not be deemed to be included [under this act]."

It is apparent from a reading of the New Ulm home rule charter that the only two legislative acts which are authorized to be performed by the city council are the passage of ordinances or the passage of resolutions. It is well established that the only substantial difference between a resolution and an ordinance apart from the subjects to which they shall apply is that the one is required to be published subsequent to its passage and the other is not. While this resolution does not qualify as an ordinance, it was considered, passed, and adopted by the city council. By the resolution the council adopted rules and regulations promulgated to define working conditions for all employees of the city of New Ulm. While legislative in character, the subject matter of the resolution is clearly a matter of administration coming within the official cognizance of the city council. It is significant that the council is empowered by the New Ulm home rule charter to pass resolutions as well as ordinances. In this case a resolution seems an entirely appropriate procedure for adopting the rules, including the rule defining probationary status of city employees. Moreover the city and its employees have been governed by the policies adopted in the resolution since 1956. We do not believe that the legislature in using the words "laws or ordinances" meant to require that legislative action by the city council on the subject of this resolution could be taken only by enactment of an ordinance. We hold that in using the term "laws or ordinances" in §§ 423.372 and 423.373 the legislature intended to include resolutions duly adopted by the city council. Our conclusion is strengthened by § 423.392, which provides:

"The provisions of section 423.37 shall apply to and bind any city of the third class which *by a resolution of its governing body*, adopted by a majority of the members thereof shall choose to be bound by it * * *." (Italics supplied.)

If a city can choose to be bound by § 423.37 by a resolution, it seems clear that it can establish working conditions of its employees, including provision for probationary status, by a resolution.

Since it is clear that the resolution effectively established a probationary period for plaintiff's husband, which he had not completed at the time of his death, and that defendant, pursuant to § 423.37, had adopted a resolution electing to be bound by the provisions of §§ 423.37 to

423.392, plaintiff is not entitled to benefits. That conclusion would seem to reflect the understanding of the city, defendant, and the employee since no money was ever deducted from the salary of decedent pursuant to § 423.377 and no deduction was permitted under any governing instrument until the completion of his 6-month probationary period.

Since there is no basis in the record on which plaintiff could be found entitled to benefits under the Police Pensions Act, it does not lie within the power of this court to affirm the judgment entered.

Reversed.

PETERSON, JUSTICE (concurring specially).
I concur in the result.