529 N.W.2d 485 (1995)
R. Doris HANSON, et al., Appellants,
v.
CITY OF GRANITE FALLS, Minnesota, Respondent.
No. C6-94-2104.
Court of Appeals of Minnesota.
April 4, 1995.
*486 Geoffrey J. Hathaway, Nelson Oyen Torvik, Montevideo, for appellants.
Gregory L. Holmstrom, Holmstrom and Kvam, Granite Falls, for respondent.
Considered and decided by HUSPENI, P.J., KLAPHAKE and FOLEY,[*] JJ.

OPINION
KLAPHAKE, Judge.
Appellants, R. Doris Hanson and others, challenge the grant of summary judgment to respondent City of Granite Falls, Minnesota (Granite Falls). They claim that the district court incorrectly interpreted the Granite Falls City Charter and Minn.Stat. § 410.20 (1992) as authorizing voter referendums on ordinances only. We affirm.

FACTS
In 1988, Granite Falls decided to build a small grass-strip airport on farmland outside its city limits. Because the project would displace landowners and renters of farmland, many people opposed the plan. Nevertheless, in June 1993, the city council passed Resolution No. 93-65, approving a layout plan for the new airport.
On July 27, 1993, a group of six Granite Falls voters formed a committee to circulate a petition seeking a formal referendum on the resolution. The committee collected signatures and presented the petition to the city council. The city council rejected the petition on the ground that the city charter limits voter referendums to the approval or repeal of "ordinances."
Appellants, a group consisting of some Granite Falls residents and landowners and renters of land proposed for the airport, sought a writ of mandamus against Granite Falls in district court. Both parties moved for summary judgment. The district court concluded that the resolution was an administrative act rather than an ordinance and that there was no right of referendum with respect to the resolution. This appeal followed the grant of summary judgment to Granite Falls.

ISSUE
Did the trial court err by granting summary judgment to Granite Falls?

*487 ANALYSIS
On appeal from summary judgment the reviewing court must ask: "(1) whether there are any genuine issues of material fact and (2) whether the lower courts erred in their application of the law." State v. French, 460 N.W.2d 2, 4 (Minn.1990). Appellants claim that the district court incorrectly interpreted the city charter and Minn.Stat. § 410.20 (1992) to permit referendums on ordinances only. The construction of a statute is clearly a question of law and thus fully reviewable by this court. See Hibbing Educ. Ass'n v. Public Employment Relations Bd., 369 N.W.2d 527, 529 (Minn.1985).
Granite Falls is a home rule charter city. See Minn.Stat. § 410.015 (1992) ("home rule charter city" is any city that has adopted a home rule charter pursuant to constitution and laws). Minn.Stat. § 410.20 allows a charter commission to provide
that no ordinance passed by the council * * * shall take effect within a certain time after its passage, and that if, during such time, a petition be made by a certain percentage of the electors of the city protesting against the passage of such ordinance until the same be voted on at an election held for such purpose, and then such ordinance to take effect or not as determined by such vote.
(Emphasis added.)
Consistent with Minn.Stat. § 420.20, the Granite Falls city charter reserves to the voters the power to "require measures passed by the council to be referred to the registered voters for approval or disapproval." Granite Falls, Minn., City Charter ch. 6, § 6.01 (1987) (emphasis added). Appellants contend that the term "measures" in § 6.01 encompasses ordinances and resolutions. The charter also contains a section entitled "The Referendum," which specifically limits referendum to ordinances:
If prior to the date when an ordinance takes effect a petition * * * be filed with the city clerk requesting that any such proposed ordinance * * * be repealed or be submitted to a vote of the registered voters, the said proposed ordinance shall thereby be prevented from going into operation. * * * [If the council affirms its adherence to the proposed ordinance as passed], the council shall immediately order an election to be held thereon.
Id. § 10 (emphasis added).
Appellants nevertheless argue that the power of referendum is not limited to the repeal of "ordinances," and that the term "ordinance" is virtually indistinguishable from the term "resolution."[1] Regardless of whether a resolution is included in the term "ordinance," we hold that the term "ordinance" in Minn.Stat. § 410.20 and the city charter is limited to legislative acts, and that Resolution 93-65 is not a legislative act.
The supreme court has long held that the power of referendum is limited to acts which are legislative in character. In Oakman v. City of Eveleth, 163 Minn. 100, 203 N.W. 514 (1925), a taxpayer sought a writ of mandamus to require the city to hold a referendum on an ordinance which authorized the settlement of a lawsuit against the city. The city charter gave voters the power to "enact appropriate legislation." Id. at 104, 203 N.W. at 516. Noting that referendums are generally directed at the "evils of legislation," the supreme court emphasized:
To allow [a referendum] to be invoked to annul or delay executive conduct would destroy the efficiency necessary to the successful administration of the business affairs of a city. * * * In the absence of a very clear declaration to the contrary, it must be presumed that the power of referendum was intended to apply solely to the legislative powers of the city.
Id. at 107, 203 N.W. at 517 (quotation omitted).
*488 To determine whether the ordinance was legislative, the Oakman court distinguished between legislative, administrative, and quasi-judicial acts. Id. 163 Minn. at 106-08, 203 N.W. at 516-17. General legislation lays down "some permanent and uniform rule of law," administrative acts relate to daily administration of municipal affairs, and quasi-judicial acts are the product of investigation, consideration, and deliberate human judgment based upon evidentiary facts of some sort. Id. Application of this analysis led the Oakman court to hold that the proposed ordinance was quasi-judicial rather than legislative in character, and that the voters therefore were not entitled to a referendum. Id. at 109, 203 N.W. at 518.
A more recent case, Housing & Redev. Auth. v. City of Minneapolis, 293 Minn. 227, 228, 198 N.W.2d 531, 533 (1972), involved the interpretation of a city charter and Minn. Stat. § 410.20. In Housing & Redev. Auth., Minneapolis residents obtained an injunction preventing the city from holding a referendum on a charter amendment, and two supporters of the amendment appealed. One provision of the charter amendment conferred the right of referendum on "any action" taken by the city council, not limited to the adoption of ordinances. Id. at 234-35, 198 N.W.2d at 536. Making a distinction similar to that made in Oakman, the supreme court reasoned that, if allowed to stand, the charter amendment would create a "`chaotic situation' in city government" and allow referendum on such "actions" as
the settlement of lawsuits, entering of contracts, acceptance or rejection of bids, sale of municipal bonds, appointment of city officials, levying of taxes, granting of licenses and permits, and the adoption of budgets.
Id. 163 Minn. at 235, 198 N.W.2d at 536. The supreme court noted that the restrictions in Minn.Stat. § 410.20 "express a legislative intent to limit referendum to ordinances," and held that the charter amendment was invalid. Id. at 235, 198 N.W.2d at 537.
Thus, Oakman and Housing & Redev. Auth. instruct us to examine whether the city council's action in this case was legislative in character. Resolution 93-65 states in relevant part:
BE IT RESOLVED BY THE CITY COUNCIL OF GRANITE FALLS, MINNESOTA, to approve the airport layout plan as prepared by City Engineer * * * and accepted by the Airport Commission at its April 14 meeting.
The resolution clearly is not an act laying down a permanent or uniform rule of law. It simply approves a layout plan for the proposed airport, and is more in the nature of an administrative act relating to the daily administration of municipal affairs. We therefore conclude that the resolution is not a legislative act entitled to referendum.[2]

DECISION
The district court did not err in granting summary judgment. The court properly determined that Resolution 93-65 is not subject to referendum.
Affirmed.
NOTES
[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 2.
[1] Appellants cite Renner v. New Ulm Police Relief Ass'n, 282 Minn. 411, 165 N.W.2d 225 (1969) to support their position that there is no difference between a resolution and an ordinance. There, the supreme court held that the legislature intended to include "resolutions" when it used the phrase "laws or ordinances" in a statute providing for the establishment of police relief associations. Id. at 419, 165 N.W.2d at 230. Renner is inapposite, however, because it involved interpretation of an entirely different statute and examined only the procedures for adopting ordinances and resolutions.
[2] Although the resolution itself is not legislative, according to the city council, a zoning ordinance will need to be passed in order to establish the new airport. The voters of Granite Falls may have an opportunity to repeal that ordinance by referendum. See Denney v. City of Duluth, 295 Minn. 22, 29, 202 N.W.2d 892, 896 (1972) (zoning ordinances are legislative acts subject to referendum).